May it please the court, my name is Harry Carmack. I represent George Prince doing businesses, Prince Commercial Real Estate Services and Dave Beatties. I refer to my clients as the brokers and I also represented the brokers at the trial and prepared the underlying complaint in this lawsuit. The underlying complaint stated four causes of action, claiming a commission upon the sale of property owned by the defendant SMG. In my argument, I'll refer to SMG as the seller. The sale of the property... Did your client have an agreement with the seller? Yes. Where's that? We believe the agreement is the letter of intent and the Melody Land agreement. But did it have a... maybe I should be more precise. A listing agreement? Your client had a brokerage fee agreement with the church. No, they did not have a listing agreement with the church. Who was their listing agreement with? They had no listing agreement. They had an agreement of some kind with Melody to be paid. If the city had not been on the scene or ever appeared on the scene in this transaction and had gone forward from the seller to the church, that agreement would have obligated the church. Do I have it correctly to pay a fee or both or what? No, that's incorrect. The seller to pay the fee. But that would have triggered a fee pursuant to the agreement between your client and the church. No, Your Honor. There was no written agreement between my client and the church. What would have been the basis for demanding a fee, your client demanding a fee, if the transaction had been seller to church and the city were not involved? There was a separate agreement between the seller and the church executed, which we've called the Melody Land Agreement in the record. That was executed between the time of the offering notice and the acceptance of the offering notice by the city of Anaheim. That agreement contained a clause that required payment of a brokerage commission. Is there any written agreement between the seller and your client requiring the payment of a fee? No, that is executed by my client and the seller there is not. My clients have to depend on the terms of the letter of intent and the Melody Land Agreement for their commission. We're all familiar with real estate, residential real estate commissions. We've probably all bought and sold homes over our lives, at least some of us. And no question if the seller of a piece of residential property has an agreement with a real estate broker and that real estate broker does anything to cause, is the procuring cause to cause the transaction to go forward, they're entitled to a commission. Does that analogy work here? No, I don't believe it does. I believe the broker must rely upon the document that states his right to a commission. This is a little bit of an unusual situation in that the deed that the seller had was a grant deed, right? Correct. And recited in it this right of first offer on the part of the city. Correct. Does the record tell us when your client became aware of that? No, not specifically. However, we do know that both the letter of intent and the Melody Land Agreement, and the letter of intent was addressed to my clients, the brokers, indicates in the letter of intent that it is subject to this grant deed. So by the time they received the letter of intent, they had knowledge, actual knowledge of the grant deed and its contents. Okay. Go ahead. As you have indicated, Your Honor, the sale of the property was subject to a preemptive right held by the city of Anaheim. And it also was subject in this preemptive right to a requirement that the seller provide an offering notice to the city of Anaheim. And that requirement was triggered when the seller was prepared to sell the property. When it had a desire to sell the property and was prepared to sell the property, it had to make an offering notice to the city of Anaheim upon the terms and conditions upon which it was prepared to sell the property. Our argument is that by fully negotiating a transaction with a prospective purchaser, in this case Melody Land Christian Church, and reducing those negotiations to a letter of intent, and we understand the letter of intent is not binding, but the very first sentence of the letter of intent said the purpose of the letter of intent is to state the purchase price and material terms upon which the seller is prepared to sell the property. Is there a difference in real estate law applicable to this case between a right of first offer and a right of first refusal? No, I don't believe there is. In fact, I have not been able to find a single case under California law that talks about a right of first offer. The authorities talk about a preemptive right. There's two types of preemptive rights, a right of first offer and a right of first refusal. Our position is that under the facts of this case, by completely negotiating the deal with the prospective purchaser, the seller has in fact turned this from a right of first offer into a right of first refusal. The seller has evidenced exactly what the material terms and purchase price it's willing to sell the property for are, and therefore that is the offer that must go to the city of Anaheim. That offer contained a broker's commission. The offer from your client to SMG had a broker's commission, but I don't think anything was said between SMG in its letter to the city about the broker's commission. That's correct. What we're saying is that this prospective purchase was completely negotiated and reduced to a letter of intent. And in that letter of intent, the purchase price was $6.7 million. That purchase price included in writing a brokerage commission of $390,000. What we're saying is that under this preemptive right, under the express provisions of the grant deed section 412, the seller was required to extend the exact same terms and conditions to the city of Anaheim, including the broker's commission. Well, was the term in that, it appears it's ER 13, that right of first offer. In minimum terms, is that defined? What do they mean by minimum terms? Well, I took that to mean the terms that preceded the quotation marks. In other words, it says purchase price and material terms in which it's prepared to sell the property. I see it. I see it. I see it. Okay. So the purchase price would be the 6.7 million, 6.7 million, which after payment of a commission would net the seller 6.31 million. What actually happened was the offering notice was sent to the city of Anaheim stating a purchase price of 6.7 million, but not indicating the broker's commission. The city of Anaheim exercised the preemptive right and paid the 6.7 million to the seller. The brokers demanded payment of the commission and the seller refused, and that's the basis for the underlying lawsuit. We believe that the district court erred in applying the case of Natris versus Sitco. The district court, we feel, applied California law as it applies to the holder of the preemptive right. In other words, in our case, the city of Anaheim. Under the Natris case, the holder of the preemptive right is entitled to not match the terms of the offer in certain circumstances. Under Natris, that circumstance was the holder of the preemptive right subtracted the broker's commission. Natris does not stand for the proposition that the seller can alter the terms of the offer, alter the terms of the tender. So that's why we feel Natris is improperly applied in this case. In fact, in Natris, what happened was the seller received an offer from a prospective buyer, included a broker's commission. The seller tendered that exact offer to the holder of the preemptive right who was a tenant. The tenant deducted the commission. The seller received exactly what it would have received under either deal. Under the prospective purchase, the broker's commission was subtracted. Under the purchase that actually went through, it was subtracted. That's not what happened here. The seller profited in the amount of $390,000 by the way it exercised the preemptive right. Was there some reference in the briefs to if this case were reversed, there would be evidence as to discussions between the city and others that it knew a broker's commission was payable or something here? Well, the reference in the briefs was that no evidence was taken on any of those matters. The negotiations that led to the letter of intent or what knowledge the city had when it paid the $6.7 million. This was a 12B6 dismissal, right? Yes, it was. Yes. We believe that the correct California law is the holding of the case of sin. Let me take it just a little farther here, Mr. Carmack. It was a dismissal without leave to amend. That's correct. And you were contending I think at one point that if you had leave to amend, you would do certain things or show certain things. Am I correct that you've made that representation? Yes, it is correct that if we had leave to amend, we would include additional facts into the complaint. What facts? Facts that would indicate that there were negotiations prior to the signing of the letter of intent involving the brokers where they were. It was represented to them that they were covered one way or another. By the city? No, by close of escrow. In other words, they would be paid whether it closed with the city or whether it closed with Melody Land. Oh. Those are the types of facts we would allege. I'll make it perfectly honest with the court. If the court believes that as a matter of law, the seller can change the offer that it received from the prospective purchaser under these facts and tender that offer to the city of Anaheim, we don't have a case at all. We wouldn't be here. But you knew, of course, that the city had been notified pursuant to this right of first offer. Were you given a copy of that right of first offer that was given to the city, that notice of the offer? Your Honor, I don't have the information as to when the brokers received that. I know the date on it, but I don't know when they were given it. Did you want to save a little time for rebuttal? Yes, please. Thank you very much for your argument. Counsel? I'm Richard Fannin. I represent SMG. The broker was under no illusions about the contingent nature of its agreement. The letter of intent said that the letter was null and void if the city exercised the right of first offer. The Melody Land SMG sale agreement said that the contract was null and void if the city executed the right of first offer. The letter of intent provided for a broker fee upon close of escrow. The escrow being that between SMG and Melody Land. The sale agreement provided for a broker's commission upon sale of escrow, specifically defined as the escrow between SMG and Melody Land. There was never an escrow between SMG and Melody Land because the city exercised its right of first offer. If SMG and broker were in agreement for a broker's fee to be paid upon the sale to the city, then such a provision could easily have been put into the letter of intent, the sale agreement, or the null and void provisions would have exempted the broker's commission. It's our position, unlike the position maintained by the broker, that when SMG made the right of first offer, all it had to do by the exact language contained in the grant deed was give the city the minimum terms under which it was willing to sell the property. The city then had to say yea or nay. But that's the question, is whether the minimum terms you say give the purchase price and the material terms on which it's prepared to sell the property. And it gives the purchase price as $6,700,000 this letter of June 28 at ER 46. And terms are all cash, as is condition, closing by. And nothing's said about anything about having to pay a broker out of here. Of course they don't say, and we've got some obligations on the property we'll have to satisfy and we've got to wipe out some liens. It's a pretty bare kind of a notice. Right, it is a bare notice, and it specifically does not say anything about the broker's commission. Our position, it didn't need to because the broker's commission is not something that the city had to pay. The city only had to say we're going to accept it, buy it for $6.7 million. Remember, the city of Anaheim was not brought to SMG by the actions of the broker. The city had a preemptive right that extended back, I believe, to 1997. And its right had nothing to do with any efforts that were occasioned by the broker. The broker was going to get a fee if there was a sale to Melody Land. Or, following the Torelli case, if there was an attempt to, if the seller refused to go through with a sale to Melody Land, or if there was an attempt to cheat the broker out of the commission. But that's not this case. This isn't the case. I suppose the city could have said, well, are you subject to a commission or something, and then dealt with SMG to say, well, we're not going to give you $6.7, we're going to give you that amount. Or, I don't know, they would have dealt with a commission. They could have done that, and then there would have been further negotiations. But we were not required to put the net amount or a matching amount. This is, and once again, I take exception with the argument of counsel. I see a big difference between a right of first offer and a right of first refusal. Which is what? In a standard right of first refusal, you give an offer to the person with the preemptive right, and the preemptive right, that offeree has to match any bona fide offer in any way possible. With all the terms. With all the terms. And it has to be a bona fide offer. Here, there doesn't have to be an offer at all. All we have to do is tell the city, city, 6.7, 6.5. We could have said 6.5. We were not bound by the offer made by Melody Land in whatever we said to the city. The only restriction is, once we made that offer to the city, and the city said no, then we can't sell it to somebody at a lesser price. But that was the only restriction placed upon SMG by the terms of the grant deed. And SMG complied in every detail with that. The city is out there by virtue of the language of the grant deed. Yes. Sort of a brooding omnipresence in the sky, if you will. Right. And SMG owns this property, but it can't consummate a sale to the city under the terms of the offer without there being another offer. No. Am I wrong about that? I think you're wrong about that on the right of first offer. We didn't have to have an offer from Melody Land in order to go to the city and say, here, city, 6.7 million. We didn't need that at all. We could have gone to the city and said 6.7. The city could have said no. And then we would be free to enter into negotiations with anybody to sell, as long as we didn't sell for less than 6.7. We didn't need that underlying offer. You didn't even have to have an offer. Did not need to have an offer. You could write, you could go to the city and say, we're thinking about selling this property within the next year, two years, whatever, and we think it's worth about 6.7 million. If you want it, the clock's on for you to exercise your first offer rights. Otherwise, we're going to go out to the market and sell this to anybody we want at that price or less. Absolutely. Does that capsulize it? That's absolutely correct. That price or more. That price or more. That price or more. Absolutely the case. Okay. You know, it's not in the record, but SMG was looking to get out of the business of running this theater in any case. They happened to have one offer by Melody Lamb. They would have sold it in any case because they were losing money. But that's not before us on the record. Okay. But that encapsulates our position. Once that happened, we don't have to pay the commission to the broker. And there is no agreement here that survived the city's exercise of their right of first offer, which committed us to paying a commission. As far as leave to amend, the complaint already alleges that the city knew about the commission. That's in the complaint. So I don't know what they can gain by amending to include some oral negotiations. Moreover, both the SMG-Melody Lamb agreement and the SMG-City of Anaheim agreement, both of paragraph 7.1, have an integration clause stating that all oral negotiations, prior negotiations, oral statements have been superseded. To the extent that they're claiming that they're a third-party beneficiary under either of those contracts, they're going to be bound by the exclusion of oral negotiations and statements said during negotiation. Okay. Let's hear a rebuttal. Thank you for your argument, counsel. Thank you. I'd like to point out to the court what is deceptive about the offering notice to the city of Anaheim. Again, the offering notice fails to set forth the fact that there's a broker's commission that would be due in the sale that's already been negotiated. What obligated them to do that? The grant fee. Expressed terms of the grant fee to the preemptive right say they have to set forth the material terms. And the reason the broker's commission is a material term is that under the holding had the city chosen to, they couldn't have done that. And that's why it was deceptive in the offering notice. Have they been heard to complain? No, they have not been heard to complain. But, Your Honor, I would indicate that in the complaint it states that the city of Anaheim, before it paid the sales price to the seller, asked for and received a copy of the prospective sale agreement between Melody Land and the seller. And in that prospective agreement, there was the broker's commission. So it raises a question of fact. When the city did pay that $6.7 million, they knew that that other offer included a broker's commission. We don't know, because this is a 12B6 motion, what were the reasonable expectations of the parties. We don't know whether the city of Anaheim intended to pay the broker's commission. Your opponent argues that the terms of the first offer right contained in the grant deed didn't even require there to be a pending offer. Is that correct? Well, that's true, but that's not our fact, because there was a pending offer in our case. I would suggest that there's three different scenarios that this right of first offer could have arisen under. The seller can make an independent determination that wants to sell the property and come up with any price it wants and offer that price to the city of Anaheim. Obviously, there's no broker's commission to my clients. The second way it could happen is an offer comes to the seller. The seller really didn't have any desire to sell the property, but it triggers his desire to sell the property, but he doesn't agree with the offer. So he can still go to the city of Anaheim with his own terms and conditions and give those to the city of Anaheim. Neither of those things happened here. There was a complete negotiation of the prospective offer. It was reduced to writing. Those terms and conditions were not presented to the city of Anaheim. Thank both counsel for their arguments. They're really quite helpful. The case just argued will be submitted for decision. The court will stand in recess for the day. Thank you very much. Thank you.
judges: Noonan, Thompson, Hawkins